Golden v. Mayorkas case to come forward, please. Good morning, Your Honor. I would like to reserve four minutes for rebuttal. I am counsel for the plaintiff, Alexander Golden. Alex is my son. Alex is autistic. This case has expert witness evidence that is unusual and probably unique. Alex was fired by the Department of Homeland Security because they accused him of lying. That happened in January and February of 2022. Alex told them when they first accused him of lying that he didn't lie, that he had made a mistake. He had told them when he applied for the job in 2019, two and a half years earlier, that he was disabled. He told them in writing that he was disabled and that he was autistic. When they accused him of lying, he said, I made this mistake because I was upset and because I am autistic. I didn't lie. All right. Let's go through what he actually said, because I'm having difficulty seeing how this is just a spatial memory issue. In his email of September 28th at 8.21 a.m., he says, hello. It was around 4.30 last night as I was descending the stairs at the Los Angeles Street entrance. I lost my footing, fell two-step, and landed on my left shoulder. My ankles were also injured. I was able to stand up and walk to my bus stop on Hill Street. But since last night, the pain in my shoulder has gotten worse. Then in his worker's comp thing, I guess it's a form, form CA-1, for the place where the injury occurred, he listed 300 North Los Angeles Street Federal Building, 300 North Los Angeles Street. He says, cause of injury, quote, leaving the office, I fell down concrete steps. Then he actually does a reenactment of his injury. On the morning of September 30th, he goes to where it happened. He goes with Maureen Killian-Larios, who's a supervisor. He walks from his workspace in the Federal Building Room 1001, exits the Federal Building through the front doors onto Los Angeles Streets. I'm going to just quote from here, from the declaration. Quote, he and I walked to the top of the stairs. About four feet to the left was the handrail at the center of the stairs. Mr. Golden told me he was about three feet away from the handrails when he started down the stairs. He showed me where he was when he stated he fell down the stairs and told me that he slipped on the first or second step in front of the Federal Building and fell several steps. He then stated that he got up and continued on his way home. So I guess I am unclear on how he would be able to do a complete demonstration of exactly where he was, how many feet he was from the handrail, which step he fell on, how many steps he fell further, and then he got up and continued on his way home. So I guess I'm looking at all of this, and for me, I am wondering about lack of candor. And then if you add on the fact that after his email exchange, the September 28th one that I read into the record, it says, Mr. Golden was concerned about paying for his medical care since he did not have any medical insurance in California. He asked me whether his insurance through USCIS would cover medical care that he needed for the September 27th, 2021 fall. He informed me that he had not heard back from USCIS headquarters about his insurance coverage and that he only had out-of-state insurance. Following the conversation, then this is Ms. Rosalynn Carter contacts USCIS headquarters to verify whether Mr. Golden had health insurance through USCIS. She later discovered that his medical insurance provided through his job at and submitted it to USCIS. So if I look at all of this evidence, tell me why there's no lack of candor here. Because he's autistic. That's why. He fell down. That was traumatic. He waited two years for this job that had been offered to him in 2019. He started in 2021, two years. So all autistic people then have a lack of candor disability? Is that the equation that you're drawing here? How can you do a complete reenactment with very specific details? How far I am from the handrail? Which step did I fall on? Exactly how many steps did I fall down? How can you do that detailed reenactment? As I will explain, and there are two expert witnesses in this case, which is the result of what they wrote is what makes it unique. But here are the answers to your question. The first is that there were two sets of stairs. One was across the street. They were similar. His autism as part of, in addition to falling down, is what... What is in the record that the stairs are identical? The food court in between the courthouse and the... I don't think those are identical stairs, but tell me where in the record it says that those are identical. They're similar. I don't know where that is in the record. That's not the most important part. The most important part is what autism is. Non-physical disabilities are hard for people to understand. There's an EEOC report in the record that explains that. And here's what you do when you have a situation like this. So tell me exactly what the autism does with his memory. What does it do with his memory? And then let's talk about how that would not implicate whether he can do his job. So the answer to the question about the autism is we have an autism expert who submitted an expert report. In that expert report, she explains the way some autistic people process information. Her conclusion is she wrote... This is Catherine Lord. Catherine Lord wrote, it is her opinion that arising from his autism, Alex had a false recollection of the location of the fall, which continues to this day, and that he believed the location he reported was correct. Alex did not lie. Now, if there were any question among... But can I ask you something? With the reenactment, was all of that accurate except for the location? Or were some of the other details also inaccurate? Like the three to four feet from the handrail, which step I fell down on, how many steps I fell down? Is the entire reenactment inaccurate because of the autism or just the location? The expert report says that it is common for people with autism to remember very narrow details, but not something broader. And now we get to the most important thing. If there were any question among experts who actually know about autism, you would expect that Homeland Security would have obtained an expert, which they did, who said, this is a crock. I don't believe this. But that's not what happened. And that's what makes this case, this part of this case, in my experience, my research, unique. Here's what Homeland Security's expert wrote. And I can't emphasize this enough. This is Homeland Security's expert. I do not dispute Dr. Lord's conclusion that Alex has autism. Dr. Lord presented, this is the Homeland Security expert talking about Dr. Lord. Dr. Lord presented a logical and scientific explanation for Alex's poor recall. And here's the kicker. Here's what Homeland Security's expert wrote. Thus, I do not dispute her statement that Alex Golden did not lie about the incident on September 27, 2021. He simply was upset and confused and did not recollect the spot where the incident happened. That ends all of the inquiry. Okay, let me ask you a question. Your son was an immigration services officer. His job is to grant or deny complex and highly sensitive immigration applications for immigration benefits that are important to the applicants. I'm just looking at the job description, ER 357. It's to interview applicants and petitioners, elicit their statements, assess their credibility, analyze the information, to identify the facts that form the basis for determining the eligibility for immigration benefits, doing the security checks, and it just goes on at ER 357. So if there is an inability to recall broader things and only to focus on narrow details and generally have poor recall, then how does that not present an issue for whether he could perform this particular job? It doesn't because falling down and remembering where you fell is not an essential function of the job. What you're saying, Your Honor, is what was described incorrectly in Homeland Security's brief. That's what the section of the ADA, which is what applies to this even though the Rehabilitation Act controls it, calls the business necessity defense. The business necessity defense is where the employer says, we have a business necessity so we can't have somebody like this working for us. More importantly, though, is that that's never what Homeland Security really said. For almost three years, Homeland Security said, Alex, you're not autistic. You're just a liar. And when they talked about his qualifications, they say, you're not qualified because you're a liar. Except it is undisputed, the testimony from our expert and from Homeland Security's expert is undisputed that he didn't lie. That's what Homeland Security's expert says. So for purposes of a court's analysis of this case, it doesn't matter what individual judges think personally about what might or might not be caused by autism. Because two experts, and this is unheard of by me, where the defense expert says, I agree with the plaintiff's expert. And that's really the end of the case. I see I'm down to less than three minutes, so I'll keep my three minutes for rebuttal. I actually have another question for you. You rely on a Fifth Circuit case, which relies on a Ninth Circuit case head, to argue that the autism only is necessary to make a difference in the outcome. But the Ninth Circuit overruled that causation standard and required a but-for standard in a subsequent case. So do you acknowledge that the but-for causation is a proper standard on your disability? No, the evolution of that standard through Head and Pinkerton. Head is 2005. Murray, which I'm relying on for the but-for causation, is 2019. Yes. And I cannot tell you the exact chronology, but what I can tell you is that two Ninth Circuit cases, Humphrey and Gambini, which are part of the Ninth Circuit jury instructions, say this is the Ninth Circuit jury instruction 12.1 ADA employment action. And it says, this is the jury instruction, the plaintiff was discharged, their inserts, was discharged because of his physical or mental impairment. That is, when you look at the Ninth Circuit jury instructions, that is based entirely on Humphrey versus Memorial Hospitals, Gambini versus total renal care. And what those two cases say, most importantly, this is from Humphrey, for purposes of the ADA, with a few exceptions, conduct resulting from a disability, that's what we have here, he had a mistake of recollection because of his autism, agreed by the two experts. Conduct resulting from a disability is considered to be part of the disability rather than a separate basis for termination. And then Humphrey goes on to say, this is what decides the case, where a person is fired because of conduct related to a disability. Alex's mistake. Conduct related to a disability. The employer has fired the employee because of her disability. So the standard for the ADA, Rehabilitation Act, is, was the plaintiff fired because of his disability? Now, if you were to apply a but-for test, which is stricter, though that's not the Ninth Circuit jury instructions, it's still mad because the facts are really so simple. The two experts said he didn't lie, he made a mistake, those facts are undisputed. That's really the end of the discrimination case. All right, thank you. I'll give you two minutes. You have 17 seconds left, but I'll give you two minutes for rebuttal. Good morning, Your Honors, and may it please the Court. AUSA Trent Fuji on behalf of the Homeland Security. Immigration Services officers are a public trust role that requires accuracy and candor. The Rehabilitation Act isn't a sword. So your expert conceded that Mr. Golden didn't lie? No, Your Honor. So then why doesn't that just defeat any justification for termination based on lack of candor? No, Your Honor. Our expert stated that she did not dispute the conclusion by given that she did not conduct an IME or examination appointment. She was assuming those facts to be true regarding whether or not he lied on the step. No, she says I do not dispute Dr. Nassif's conclusion that Alex did not lie per se. That's correct, Your Honor. She did not dispute that, and so it's not as if she agrees he did not lie, but she's just not disputing that fact for the purposes of her report. Well, but that just leaves undisputed basically for summary purposes that he didn't lie. I don't think that's where the case turns, Your Honor, because under the McDonnell-Douglas burden shifting factors, plaintiff still has to prove that, one, he is qualified to have the position with or without an accommodation. So even if we assume for the sake of argument that Mr. Golden did not lie, then he still has to prove that he is qualified to be an Immigration Services officer. Okay, and he was hired after presumably a fairly rigorous thing, so obviously the agency thought he was qualified. I think there's a distinction, though, Your Honor, especially under Anthony V. Tracks, where you have to be qualified at the time of termination, and this misstatement occurred two weeks on the job, and so the agency was unaware that Mr. Golden suffers from inaccurate recall, as Dr. Lord describes it, that he suffers from false memories, and I think that's... That was due to a trauma. How is that proved that he still couldn't accurately put down information that was just in a normal interview setting? Well, Your Honor, I think the record does reflect that being an Immigration Services officer can be a difficult job and that they are interacting with the public during immigration interviews, and so these interviews can become contentious, and so... That's not the same as falling down steps and having trauma and hurting yourself. I understand that, Your Honor, and point taken, but I think in terms of the material misstatements that were made, that there is no way for Mr. Golden to even be put on notice that he made this material misstatement when he continually repeated it over and over again, whether in person when he recreated the fall with his supervisor, whether it was multiple times in writing, and it wasn't until January 4th when he was confronted with the evidence of the video where he said, it may have been resulted due to my autism, but to this day, he still recalls that he fell on federal property. So, why shouldn't we find that your qualifications rationale isn't pretext? Because in the termination letter, it says, you know, I find that you lack candor, not only to your supervisor, but also to Kelly and Larios when you describe your accident to them. As an Immigration Services officer, you occupy a position of trust and are expected to represent the agency with integrity, and in a manner that is above reproach, your actions betrayed this expectation. I don't see anything in the termination letter saying, because of your lack of candor, we find that you are no longer qualified. So, and if I look at the deposition testimony of Nancy Albee, you know, she says, yep, I'm the one that decided to fire him, and she, you know, says, in your termination letter, you said he was a liar. Answer, yes. Question, yes. And you fired him because you concluded he was a liar. Answer, yes. Okay, and for no other reason, right? Answer, conduct, correct. Question, that you fired him only because you concluded he was a liar, right? Answer, yes. So, if you have all of these statements, that they fired him solely because he's a liar, how can you now come in and say, oh no, we actually hired, we fired him because he's not qualified for the job? That's not what the government is arguing, Your Honor. We're arguing, yes, he was terminated for lack of candor, as it says in the termination letter, but on summary judgment during the, on summary judgment, the McDonnell-Douglas burden-shifting factors still apply, and plaintiff still has the burden of showing that he has to have a prima facie case, and so he has to prove that he is qualified at the time of termination, and it's not pretext for the government to rebut that qualification of a plaintiff on summary judgment. All right, the question is, though, has he failed, has he truly failed to establish a prima facie case? Yes, Your Honor. Why do you think so? Because in order to be an immigration services officer, the record demonstrates that you must be able to accurately recall basic information, and by his own expert, which is listed as inaccurate recall or false memories, then he is unqualified to serve in that role. Well, but the expert didn't say false memories just in all aspects of his life. It just talked about a consequence of this fall. I understand, Your Honor, and I understand that it's, they want to be characterized as spatial, but when you look at the evidence in the totality of what actually occurred and the multiple opportunities he had to correct his statement, he was given multiple opportunities over a several-month period, and you continually reaffirmed that misstatement. Well, but that's if, in fact, though, his autism caused him to fixate on where he thought that's going to continue indefinitely. And that's correct, Your Honor, and that's why he's unqualified, especially when... But why is he unqualified? If I look at the duties of an immigration services officer, I don't see anything here that requires good spatial memory. Correct, Your Honor, and that's why it's not spatial memory. It's to be able to accurately recall basic facts. And so, as Catherine Lord wrote, he suffers from false memories. And so, if you have an ISO that suffers from false memories and during an interview inaccurately recalls basic facts regarding an applicant, that could have disastrous consequences for those applicants. And the troubling thing for, on the behalf of the government, is that there was no notice on behalf of plaintiff of whether or not he might have had a false memory. He continually reaffirmed that same misstatement over and over again, and during deposition, he stated... But he wasn't aware that he had a false memory until he learned that you all had a video showing that he was not actually where he said he was when he fell. That's correct, Your Honor. He wasn't aware. He didn't come to his attention until he learned about this video. But there wasn't even an inkling, there wasn't sort of notice that his memory might not have been correct. And so, in terms of a reasonable accommodation... But would you expect someone who has a spatial memory loss issue to be able to know that? I think if you were to have certain... For instance, if you were to come up with a reasonable accommodation, there's no, in the eyes of the agency, reasonable accommodation to assist him with this false memory, since there's no way for him to be on notice. Why did your agency not hire a better expert? I'm sorry, Your Honor. I'm not sure what you mean by that. Well, I mean, an expert that, like your opposing counsel said, experts said, this is all hokey, that autism wouldn't cause this. He's an out-and-out liar. Well, Your Honor, our experts apply the facts as they see them. And so, she believes, she assumed for the sake of this report, that he wasn't lying. But even if he wasn't lying, he's not qualified to have this job. Well, then that isn't the reason the agency gave, though, for firing him. It was lack of candor, is what it gave. And that, does that raise an inference that there's pretext here? No, Your Honor. That, on summary judgment, the agency still is allowed to rebut whether or not a plaintiff is qualified. And so, that is the actual analysis going on. At the time of termination, their legitimate reason was that he lacked candor, or he lied. What's your best case, you think, closest on the facts to this? I think Pulitasi versus Wills, Your Honor, is our best case. That's an ICE agent with Guillain-Barré syndrome. And the court found that the plaintiff's position statement, that he could perform essential functions with a reasonable accommodation, didn't create a disputed fact, that you have to really look at the position description. You have to look at the undisputed evidence by his supervisors, who state that accurately recalling basic information is integral to being an immigration services officer. Is that syndrome a little bit different than the autism problem here? I think so, Your Honor. It's not directly. I'm pointing that Guillain-Barré syndrome reflects some more of a physical disability. But here, as a mental disability, you must still accurately recall basic information during immigration services interviews when reviewing a files. And so, there's... Is there any evidence for the weeks he was on the job? Did the agency check his interviews and his reports and say, ah, there's several discrepancies here? Given the fall occurred only two weeks after he was on the job, he wasn't already interviewing any applicants during that time. Why isn't this at least a jury question? You have a termination letter that says, we're firing you just because you're a liar. You have deposition testimony of the decision makers saying, I fired him because he's a liar. And then now you're coming and your own expert says he didn't lie. Why shouldn't this at least go to a jury? I don't think it goes through a jury, Your Honor, because there's been no evidence of pretext on the record. There's been no evidence that anyone conspired against Mr. Golden. And in fact, they gave him multiple opportunities to be able to correct his misstatement. And ultimately, when it to being qualified, it goes down to the basic fact that immigration services officers have a public trust role and that they need to be able to accurately convey basic information. The counsel, Judge Gould, I have a question for you. Why wouldn't it be more fair, instead of district court specifying the fact issues that we think need to be determined? I understand. I think I understand your question, Your Honor. I don't believe the record demonstrates that there's any need for this to go to a jury trial. I think the record is clear in that Mr. Golden had multiple opportunities to correct his material misstatement. His own expert agrees that he suffers from inaccurate recall and he suffers from false memories. And so I don't believe there's any disputed material facts where this would require a jury trial. Thank you. Unless the court has any further questions, we ask that you affirm. All right. Thank you, Mr. Golden. I'll give you two minutes. Counsel misstated Catherine Lord's expert report. It was happening too fast. I can't tell you every single misstatement. But he twisted the words. Most importantly, Catherine Lord didn't say that he has memory issues, like he walks around all day and has no idea where he is. That's not what he said. He said that he has memory issues and that's not what he said. She wrote that in this instant, because of the combination of the trauma and his autism, with regard to the qualification issue, once again, I'm going to rely on the defendant's expert. The defendant's expert wrote the... What Catherine Lord said. She said that his inaccuracy, his false recollection of where he fell, is directly linked to episodic memory deficits associated with autism. Yes. And that is what she wrote. That is not what counsel described the description of the way Alex's autism affects his memory. With respect to his qualifications, as you pointed out, Judge Gilman, what's involved in actually doing this job. This is what the expert for the defendant... Again, highly unusual. The defendant's expert wrote the following. The evidence is clear from the expert reports, from the assessment data obtained by Dr. Lord, and from Alex's job application and essays, that this is a very educated young man who writes well, who functions at a high level intellectually and verbally, and who comports himself well enough to have been hired for a number of jobs in his adult life. And I'm going to finish. I only have a few seconds, but I'll say you have to look at the Rehabilitation Act, which is... This is all in a brief, which is unique among discrimination statutes in that it imposes a duty on the federal government, not just to not discriminate against people with disabilities in the conventional sense of treating them worse, like the sex and the race and the national order. I'm looking at just the Catherine Lord expert report. It says, autistic people typically have memory challenges, particularly in what is called episodic memory, or memory for everyday events. Different aspects of an event, such as what happened, when it happened, how it happened, where it happened, and how the person experiencing the event felt, are put together after the fact to create a memory that is then recalled. Research has shown that autistic adults are particularly poor at recalling events in which they participated compared to those they observed. How would that not go to deciding whether someone is eligible for a very important immigration benefit? Because it doesn't relate to all of the skills involved in looking at applications and interviewing applicants. And to that point, the standard of behavior that's imposed on the federal government under the Rehabilitation Act is different from the other anti-discrimination statutes. It requires that the federal government be a model employer of people with disabilities and to have affirmative action programs. It's the only... He was asked, what accommodation do you want for your autism? He said, I don't need any. He doesn't. He doesn't need an accommodation. And in the case of DARC, I don't remember the last name, DARC against Curry County, Ninth Circuit case, it's completely clear that as you questioned Judge Gilman, it's completely clear that when an employer writes a long termination letter that they worked on for two months that says we're firing you because you're a liar, they can't, after the fact, come up with another reason. I can't say, oh, well, you're not qualified anyway. That's exactly what happened in DARC and the defense was not even allowed to be permitted. It's not a question of Alex proving his qualifications. That's called the business necessity defense. And under CRIPE versus City of San Jose, that is most distinctly the burden of the employer and the burden is very, very heavy. I think I've gone over my time. I'm happy to talk to you for an hour if the court wants, but I'll defer to the court on that. I don't have any further questions, but if Judge Gould does, go ahead, please. Judge Gould, I do have a question for you. Could we permissibly vacate and remand for trial, but ask the district court to pose certain questions to the jury that had to be resolved? That certainly would be appropriate. We moved for summary judgment and our request on appeal is that summary judgment on liability be entered in our favor, but certainly what your honor proposes is one resolution to the appeal. Okay, thank you. Thank you, Judge. Thank you all. Yes, you're three minutes, 37 seconds over time, but thank you so much to both counsel. Very helpful arguments. Thank you very much.
judges: Gilman, GOULD, KOH